IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 11 2003

Michael N. Milby
Clerk of Court

| UNITED STATES OF AMERICA, | ) | Case No.: B-98-466 |
| Respondent | ) | |
| | ) | |
| v. | ) | PETITIONER OBJECTION TO |
| | ) | GOVERNMENT'S RESPONES TO |
| | ) | DISCHARGE TERM OF IMPRISONMENT |
| John Edward Mortimer | ) | |
| Petitioner, | ) | |
| (C.A. No.: B-00-171 | ) | |
| _____ | ) | |

COMES NOW, the Petitioner, John Edward Mortimer, objecting to the government's RESPONSE TO DISCHARGE TERM OF IMPRISONMENT, based on the following facts:

A). The government is in default. The government is in violation of Federal Rules of Civil Procedure Rule 55, which states in part.

> When a party against whom a judgement for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

The government had 30 days to respond to Petitioner's motion, the government refusal to respond is an open admission that Petitioner would be prejudiced by granting the government a MOTION FOR LEAVE TO FILE RESPONSE TWO DAYS OUT OF TIME. Petitioner is an inmate with limited resources at a satellite prison camp, on the other hand the government has no excuse to respond in a timely manner as Ordered by the court. As Justice Brandeis observed in <u>Olmstead v. United States</u>, 277 U.S. 438, 485 (1928): "To declare that in the administration of criminal law the ends justifies the means to declare that the government may commit crimes in order to secure the conviction of a private criminal would bring terrible

retribution. If the government becomes a lawbreaker; it invites every man to become a law unto himself; it invites anarchy." Public servants must <u>play by the same rules</u>, if they <u>play outside of the rules</u>, as in this case and beyond the scope of their authority, the government motion should be denied on the grounds of default.

B). AMENDMENT 645 TO THE UNITED STATES SENTENCING GUIDELINES—

The United Sentencing Commission, on November 1, 2002 amended the Commentary to U.S.S.G. § 5G1.3$^{(1)}$ to provide that a sentencing court may downward depart when imposing a federal sentence in order to achieve a more reasonable sentence for conduct that has been fully taken into account in the offense level for the instant offense. <u>See</u>, U.S.S.G. Appendix <u>C</u>, Amendment 645, effective November 1, 2002, <u>Reason for Amendment</u>. (Copy attached hereto as Attachment "B"). Prior to the new amendmendment or **clarification of the amendment**, the federal circuits were split on the question of whether a sentencing court could downward depart in consideration of a discharged term of imprisonment. For example, in <u>United States v. Hagan</u>, 139 F.3d 641 (8th Cir. 1998) and <u>United States v. Blackwell</u>, 49 F.3d 1232 (7th Cir. 1995), both court held that a district court may downward depart to adjust the sentence for the instant offense when the defendant has already served a term of imprisonment if the undischarged term is for conduct fully taken into account in establishing the offense level for the instant offense. The Seventh Circuit Court of Appeals noted that the purpose of the provision is to "insur[e] that a defendant is not penalized twice for the same conduct." 49 F.3d at 1241.

---

1. <u>See</u>, Attachment "A" for the full text of U.S.S.G. § 5G1.3.

-2-

The Fourth Circuit Court of Appeals took the opposite view, basing its findings on the construction canon <u>expressio unius est exclusio alterius</u> toward the conclusion that since the Sentencing Commission directed that credit be given for undischarged terms of imprisonment, it consciously denied [district court] th[e] authority to accord credit for discharged terms of imprisonment. <u>United States v. McHan</u>, 101 F.3d 1027, 1040 (4th Cir. 1996). The Fourth Circuit Court of Appeals comment was in reference to U.S.S.G. 5G1.3$^{(2)}$. The Eighth Ciruit Court of Appeals later expressly rejected the Fourth Circuit's reasoning and sided with the Seventh Circuit. <u>United States v. O' Hagan, supra</u>, finding that the Sentencing Commission neither prohibited nor discourage a downward departure to account for an expired term of imprisonment, which indicated that such a decision was within the sole discretion of the sentencing court.

The Sentencing Commission resolved the conflict by rejecting the Fourth Circuit's view, by amending § 5G1.3 to provide that "in case of a discharged term of imprisonment, a downward departure is not prohibited if subsection (b) would have applied to that term of imprisoment had the term been undischarged."

In the Eleventh Circuit, ths courts have long recongnized and adhered to the spirit and intent of the guidelines to eliminate

---

2. Although U.S.S.G. § 5G1.3 did not expressly authorizes courts to downward depart to adjust for discharged terms of imprisonment, Commentary n.2 to the provision instructs that sentencing courts should award credit for time already served for the same conduct by subtracting from the sentence the court intends to impose the amount of time the defendant has alresdy served, and note on the Judgement Order that the sentence imposed is not a downward departure from the guideline range, but rather is an adjusted sentence to account for the term of imprisonment already served.

disparities in sentencing by taking all relevant conduct into account in order to fashioned a sentence that is both reasonable and fair. United States v. Fuentes, 107 F.3d 1515 (11th Cir. 1997). "The purpose of U.S.S.G. § 5G1.3 and § 1B1.3 is to provide one, uniform punishment for the same criminal activity." id. at 1522. The Fuentes court expounded further on this principle in a quote from the Supreme Court's holding in Witte v. United States, 515 U.S. 389, 404-05, 115 S.Ct. 2199 2208, 132 L.Ed2d 351 (1995).

The various reasonings which lead to varying results in the circuit courts persuaded the Sentencing Commission's attempt to resolve the conflict between the circuits regarding this issue of a court's authority to downward depart under the present circumstances. The Commission accomplished its objective by amending the Commentary to § 5G1.3 to authorize a district court to depart downward whwn imposing a sentence to run consecutive to a term of imprisonment that has already been served, in oreder to achieve a more reasonable and fair sentence when the defendant is faced with the harsh result of being punished twice for the same offense.

Amendments to the Guidelines, enacted after sentencing, that **clarify rules** adopted by particular guidelines are given **retroactive** effect. United States v. Scroggins, 880 F.2d 1204, 1215, (11th Cir. 1989), see also Blackwell, 49 F.3d at 1241, where it is reported that the Sentencing Commission, in response to a direct inquiry by the probation office, **clarified** the rules' intent under § 5G1.3 to authorize a district court to downward depart when imposing a term of imprisonment already served, in order to exact a more reasonable punishment.

The following is taken from CRIMINAL LAW REPORTER, Vol. 72 No. 2 page 29-30.

Sentencing

Federal Judge Has Authority to Grant Credit for Time Served on State Sentence—

Third Circuit rejects U.S. Bureau of Prisons' claim of exclusive statutory authority to award credit on Sentence.

"The U.S. Sentencing Guidelines give federal district judges authority to award credit on a defendant's federal sentence for time served on a state sentence for an unrelated offense, the U.S. Court of Appeals for the Third Circuit held Sept. 19. Other courts and the Bureau of Prisons have concluded that amendments to the guidelines in 1995 were intended to eliminate judges' authority to award credit for time served. (Ruggiano V. Reish, 3d Cir., No. 01-3703, 9/19/02).

The petitioner was convicted of a state offense in New York in 1996. Fourteen months later he was sentenced on a federal conviction for racketeering. At sentencing, the district judge ordered that the federal sentence run concurrently with the state sentence, and that the petitioner recieve credit for time served on the state sentence.

In calculating the petitioner's release date, the BOP refused to grant him credit for the 14 months served on the state sentence prior to his sentencing in federal court. The petitioner challenged this decision in a habeas corpus action pursuant to 28 USC 2241.

**BOP's Position.** The BOP maintained that, under the guidelines provision governing undischarged sentences, USSG 5G1.3, district judges lack the authority to grant credit for time served on undischarged terms for unreleated offenses. The part of Section 5G1.3 at issue in this case is the catch-all provision, subsection (c). Subsection (a) addresses offense committed while serving another sentence, and subsection (b) addresses offense that are related to each other; neither applies in this case. Subsection (c) provides:

> In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

The BOP pointed out that the commentary to subsection (b)— Application Note 2—makes clear that subsection (b)'s requirement that sentences for related offense are to run concurrently means that a defendant is to be given credit for time already served on the earlier sentence. The BOP alos relied on 1995 amendments to subsection (c) that eliminated language directing judges to impose a consecutive sentence to the extent necessary to fashion "a sentence resulting in a incremental punishment for the multiple offenses." Prior decisions of

-5-

the Third Circuit interpreting subsection (c) had relied on this language in awarding credit for time served.

**Credit May Be Granted.** In an opinion by Chief Judge Edward R. Becker, the court said that even if it were not constrained by its prior ruling in United States v. Brannan, 74 F.3d 448 (3d Cir. 1196), it would reject the BOP's arguments. The term "concurrently" as used in subsection (b) includes time served, and it should be given the same meaning in subsection (c), in the absence of some instruction from the Sentencing Commission to the contrary, the court reasoned.

The court said the change intended by the 1995 amendments was simply a softening of mandatory language to permissive language. "As we see it, the relevant difference between subsection (b) and (c) that is suggested by Note 2 is that, while credit for time served on related convictions 'should' be granted under subsection (b), it may be granted by the sentencing court in its discretion in subsection (c) case, but it is not required," the court said.

Whereas the pre-1995 commentary states that a sentencing court judge "should" consider a reasonable incremental penalty that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed had all of the offenses been imposed in a single federal proceeding, the new commentary's silence with regard to this practice of "hypothenical sentencing" indicates that it is no longer necessarily required or encouraged as it was under the pre-1995 Guidelines, the court explained."

Since the promulation of § 5G1.3 U.S.S.G Note 7 now permits the court to adjust the consecutive sentence to account for the time Petitioner had already served prior to the imposition of the current sentence, this amendment applies to Petitioner.

WHEREFORE, for the foregoing reasons, Petitioner PRAYS that this Honorable Court will grant the instant motion and exercise its discretion to apply U.S.S. § 5G1.3(b), comment (n.7) to Petitioner's current and adjust the sentence to award credit for time served in state prison.

Respectfully submitted this ____ day of February, 2003.

---

John Edward Mortimer #82407-079
Edgefield-FCI
P.O. Box 725
Edgefield, SC 29824

CERTIFICATE OF SERVICE

I, John Edward Mortimer, the Petitioner, hereby certify that a true and correct copy of tyhe foregoing OBJECTION TO GOVERNMENT'S RESPONSES TO DISCHARGE TERM OF IMPRISONMENT has been served upon the United States by placing of same in the recptacle marked "LEGAL MAIL", as provided by prison authorities for inmate mailings, with proper pre-paid postage for first-class mail affixed and addressed to:

OFFICE OF THE UNITED STATES ATTORNEY
Assistan United States Attorney
James Turner
P.O. Box 61129
Houston, Texas 77028


DONE SO this \_\_\_\_ day of February, 2003


_____,
John Edward Mortimer #82407-079
Edgefield-FCI
P.O. Box 725
Edgefield, SC 29824

Historical Note: Effective November 1, 1987. Amended effective November 1, 1989 (see Appendix C, amendments 287 and 288); November 1, 1994 (see Appendix C, amendment 507); November 1, 1998 (see Appendix C, amendment 579); November 1, 2000 (see Appendix C, amendment 598); November 1, 2002 (see Appendix C, amendment 642).

### §5G1.3. Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

(c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

*Commentary*

*Application Notes:*

1. *Consecutive sentence - subsection (a) cases.* Under subsection (a), the court shall impose a consecutive sentence when the instant offense was committed while the defendant was serving an undischarged term of imprisonment or after sentencing for, but before commencing service of, such term of imprisonment.

2. *Adjusted concurrent sentence - subsection (b) cases.* When a sentence is imposed pursuant to subsection (b), the court should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guideline range for the instant offense if the court determines that period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons. *Example:* The defendant is convicted of a federal offense charging the sale of 30 grams of cocaine. Under §1B1.3 (Relevant Conduct), the defendant is held accountable for the sale of an additional 15 grams of cocaine, an offense for which the defendant has been convicted and sentenced in state court. The defendant received a nine-month sentence of imprisonment for the state offense and has served six months on that sentence at the time of sentencing on the instant federal offense. The guideline range applicable to the defendant is 10-16 months (Chapter Two offense level of 14 for sale of 45 grams of cocaine; 2-level reduction for acceptance of responsibility; final offense level of 12; Criminal History Category I). The court determines that a sentence of 13 months provides the appropriate total punishment. Because the defendant has already served six months on the related state charge as of the date of sentencing on the instant federal offense, a sentence of

*seven months, imposed to run concurrently with the three months remaining on the defendant's state sentence, achieves this result. For clarity, the court should note on the Judgment in a Criminal Case Order that the sentence imposed is not a departure from the guideline range because the defendant has been credited for guideline purposes under §5G1.3(b) with six months served in state custody that will not be credited to the federal sentence under 18 U.S.C. § 3585(b).*

3.  *Concurrent or consecutive sentence - subsection (c) cases. In circumstances not covered under subsection (a) or (b), subsection (c) applies. Under this subsection, the court may impose a sentence concurrently, partially concurrently, or consecutively. To achieve a reasonable punishment and avoid unwarranted disparity, the court should consider the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C § 3553(a)) and be cognizant of:*

    (a) *the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;*

    (b) *the time served on the undischarged sentence and the time likely to be served before release;*

    (c) **the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and**

    (d) *any other circumstance relevant to the determination of an appropriate sentence for the instant offense.*

4.  *Partially concurrent sentence. In some cases under subsection (c), a partially concurrent sentence may achieve most appropriately the desired result. To impose a partially concurrent sentence, the court may provide in the Judgment in a Criminal Case Order that the sentence for the instant offense shall commence (A) when the defendant is released from the prior undischarged sentence, or (B) on a specified date, whichever is earlier. This order provides for a fully consecutive sentence if the defendant is released on the undischarged term of imprisonment on or before the date specified in the order, and a partially concurrent sentence if the defendant is not released on the undischarged term of imprisonment by that date.*

5.  *Complex situations. Occasionally, the court may be faced with a complex case in which a defendant may be subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules. In such a case, the court may exercise its discretion in accordance with subsection (c) to fashion a sentence of appropriate length and structure it to run in any appropriate manner to achieve a reasonable punishment for the instant offense.*

6.  *Revocations. If the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense, and has had such probation, parole, or supervised release revoked, the sentence for the instant offense should be imposed to run consecutively to the term imposed for the violation of probation, parole, or supervised release in order to provide an incremental penalty for the violation of probation, parole, or supervised release. See §7B1.3 (Revocation of Probation or Supervised Release) (setting forth a policy that any imprisonment penalty imposed for violating probation or supervised release should be consecutive to any sentence of imprisonment being served or subsequently imposed).*

7.  *Downward Departure Provision.*—In the case of a discharged term of imprisonment, a

*downward departure is not prohibited if subsection (b) would have applied to that term of imprisonment had the term been undischarged. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.*

**_Background_**: *In a case in which a defendant is subject to an undischarged sentence of imprisonment, the court generally has authority to impose an imprisonment sentence on the current offense to run concurrently with or consecutively to the prior undischarged term. 18 U.S.C. § 3584(a). Exercise of that authority, however, is predicated on the court's consideration of the factors listed in 18 U.S.C. § 3553(a), including any applicable guidelines or policy statements issued by the Sentencing Commission.*

Historical Note: Effective November 1, 1987. Amended effective November 1, 1989 (see Appendix C, amendment 289); November 1, 1991 (see Appendix C, amendment 385); November 1, 1992 (see Appendix C, amendment 465); November 1, 1993 (see Appendix C, amendment 494); November 1, 1995 (see Appendix C, amendment 535); November 1, 2002 (see Appendix C, amendment 645).

expressed by the Bureau of Prisons regarding <u>United States v. Walker</u>, 202 F.3d 181 (3d Cir. 2000). <u>Walker</u> held that an individual employed by the prison to supervise food service functions who was attacked by an inmate subordinate was not a "corrections officer" within the scope of §3A1.2. The Bureau of Prisons advised the Commission that the Bureau uses a variety of employees, contractors, and volunteers to supervise inmates and that maintenance of a safe and stable institutional environment is fostered by knowledge on the part of inmates that anyone in prison employment or performing an authorized role within a prison is afforded the protection of §3A1.2. In accord with the Bureau's recommendation, the amendment includes a broad definition of "prison official" to include prison employees, as well as independent contractors and volunteers on prison premises with official authorization, but does not include inmates.

8. <u>Amendment</u>: Section 5B1.3(a) is amended by striking the period at the end of subdivision (9) and inserting a semicolon; and by adding after subdivision (9) the following:

   "(10) **the defendant shall submit to the collection of a DNA sample from the defendant at the direction of the United States Probation Office if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. § 14135a).**".

   Section 5D1.3(a) is amended by striking the period at the end of subdivision (7) and inserting a semicolon; and by adding after subdivision (7) the following:

   "(8) the defendant shall submit to the collection of a DNA sample from the defendant at the direction of the United States Probation Office if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. § 14135a).".

   <u>Reason for Amendment</u>: This amendment adds a mandatory condition to §§5B1.3 (Conditions of Probation) and 5D1.3 (Conditions of Supervised Release) that the defendant provide a DNA sample if the defendant is required to do so by the DNA Analysis Backlog Elimination Act of 2000, Pub. L. 106-546. Pursuant to section 3 of the Act, a defendant is required to provide a DNA sample if the defendant is convicted of certain offenses (<u>e.g.</u>, murder, kidnapping).

9. <u>Amendment</u>: The Commentary to §5G1.3 captioned "Application Notes" is amended by adding at the end the following:

   "7. <u>Downward Departure Provision</u>.--In the case of a discharged term of imprisonment, a downward departure is not prohibited if subsection (b) would have applied to that term of imprisonment had the term been undischarged. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.".

48

Reason for Amendment: This amendment modifies §5G1.3 (Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment) to include certain discharged terms of imprisonment. Specifically, the amendment adds commentary to §5G1.3 to provide that courts are not prohibited from considering a downward departure in a case in which §5G1.3(b) would have applied if the term of imprisonment had not been discharged. In the case of undischarged terms of imprisonment, §5G1.3(b) currently authorizes a court to adjust the sentence if the conduct underlying the undischarged term of imprisonment has been fully taken into account in the offense level for the instant federal offense. See Application Note 2 of the Commentary to §5G1.3. By adding the new commentary, the Commission makes clear that discharged terms of imprisonment may merit a downward departure for a similar reason. The amendment thereby addresses a circuit conflict regarding the propriety of a downward departure under such circumstances. Compare, e.g., United States v. O'Hagan, 139 F.3d 641, 657 (8th Cir. 1998) (holding that a sentencing court could downwardly depart to adjust for time served on a discharged state sentence); United States v. Blackwell, 49 F.3d 1232, 1241-42 (7th Cir. 1995) (same) with United States v. McHan, 101 F.3d 1027, 1040 (4th Cir. 1996) (holding that downward departure to allow an adjustment for a discharged term was based on an error of law and therefore an abuse of discretion), cert. denied, 520 U.S. 1281 (1997).

10. **Amendment**: The Commentary to §2B1.1 captioned "Application Notes" is amended in subdivision (A) of Note 7 by striking "18 U.S.C. 1028(d)(3)" and inserting "18 U.S.C. 1028(d)(4)".

    Section 2B4.1(b)(2) is amended to read as follows:

    "(2)   (Apply the greater) If—

        (A)   the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, increase by 2 levels; or

        (B)   the offense substantially jeopardized the safety and soundness of a financial institution, increase by 4 levels.

    If the resulting offense level determined under subdivision (A) or (B) is less than level 24, increase to level 24.".

    The Commentary to §2B4.1 captioned "Application Notes" is amended by striking Notes 4 and 5 and inserting the following:

    "4.   Gross Receipts Enhancement under Subsection (b)(2)(A).—

        (A)   In General.—For purposes of subsection (b)(2)(A), the defendant shall be

49