United States District Court
Southern District of Texas
FILED

MAR 2 5 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| John Edward Mortimer<br>　　Plaintiff-Petitioner<br><br>　　　　v.<br><br>UNITED STATES OF AMERICA<br>　　Defendant-Respondent | Case No. B-00-171<br><br>Criminal No. B-98-466<br><br>PETITIONER'S OBJECTION TO<br>MAGISTRATE JUDGE'S REPORT<br>AND RECOMMENDATION |

　　COMES NOW, John Edward Mortimer, Petitioner in the above captioned case, objecting to the MAGISTRATE JUDEG'S REPORT AND RECOMMENDATION, to deny Petitioner's pro se Motion to Discharged Term of Imprisonment pursuant to USSG § 5G1.3 based on the following:

　　The Magistrate Judge erred by not accepting Commentary in sentencing guidelines manual that intreprets or explains guideline is authoritative, and bind judges and courts in excerise of their responsibility to pass sentence. The principle that sentencing guidelines manual is binding on federal courts applies aw well as to policy statements.

　　By not applying Commentary which functions to intrepret guideline or explain how it is to be applied controls, and if failure to follow or misreading of such commentary results in sentence selected fromwrong guideline range, that sentence would consitute incorrect application of the Sentencing Guidelines. amended commentary to Sentencing Guidelines is binding on federal courts, even though it is not re-revied by Congress, and prior judicial constructions of particular guideline cannot prevent Sentencing Commission from adopting conflicting interpretation consistent w/ with Constitution, Federal Statutes, and Guidelines.

　　The court of Appeals reviews the district court factual findings of

the case in the light most favorable to the government. <u>United States v. Brewer</u>, 1 F.3d 1430, 1437 (4th Cir. 1993) (holding that to sustain conviction, evidence viewed in light most favorable to government must be sufficient for rational trier of fact to found essential elements of crime beyond reasonable doubt.

Appellant avers that this this court should vacate and remand this case back to the district court for resentencing based on the following facts in law:

[1]   The commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of that guideline. Appellant entered a plea of guilty for Distribution of Crack Cocaine a Schedule II substance. The presentence report recommended that Appellant be sentenced as a Career Offender under the Sentencing Guidelines. See <u>United States Sentencing Commission Guidelines Manual §4B1.1, (novemner 1996)</u>. Section 4B1.1 provide that a defendant is a career offender if:

> "(1) the defendant was at least eighteen years of age at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a control substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

All concede that Appellant was at least 18 years of age when the events leading to the indictment occurred and that he had at least two prior felony convictions for a controlled substance offense, thereby satisfying all three elements in the definition of career offender. The district court sentenced Appellant as a career offender. The Sentencing Reform Act of 1984 , as amended 18 U.S.C. § 3551 et seq. (1988

Ed. and Supp. III), 28 U.S.C. §§ 991-998(1988 Ed. and Supp. III) created the Sentencing Commission, 28 U.S.C. § 991(a), and charged it with the task of "establish[ing] sentencing policies and practices for the Federal criminal justice system," § 991(b)(1). See <u>Mistretta v. United States</u>, 488 U.S. 361, 367-370, 109 S.Ct. 647, 652-654, 102 L.Ed.2d 714 (1989). <u>Stinson v. United States</u>, 508 U.S. 36 123 L.Ed.2d 598.

The Commission executed this function by promulagating the Guidelines Manual. The Manual contains text of three varities. First is a guideline provision itself. The Sentencing Reform Act establishes that the Guidelines are "for use of a ssentencing court in determining the sentence to be imposed in a criminal case." 28 U.S.C. § 994(a)(1). The Guidelines provide direction as to the appropriate type of punishment—and the extent of the punishment imposed, §§ 994(a)(1)(A) and (B). Amendment to the Guidelines must be submitted to Congrss for a 6-month period of review, durning which Congress can modify or disapprove them. § 994(p).

The second variety of text in the Manual is a policy statement. The Sentencing Reform Act authorizes the promulgation of "general ploicy statements regarding application of the guidelines" or other aspects of of sentencing that would further the purpose of the Act. § 994(a)(2). The Third variant of text is commentary, at issue in this case. In the Guidelines Manual, both guidelines and policy statements are accompanied by extensive commentary. Although the Sentencing Reform Act does not in express terms authorize the issuance of commentary, the Act does refer to it. See 18 U.S.C. § 3553(b) (in determining whether to depart from the guidelinee range, "the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission"). The Sentencing Commission

has provided in a Guideline that commentary may serve these functions: commentary may "interpret [a] guideline or explain how it is to be applied," "suggest circumsances which ... may warrant departure from the guidelines," or "provide background information, including factors considered in progmulating the guideline or reason underlying promulgation," USSG § 1B1.7.

[2,3]   As we have observed, "the Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal case." Mistretta v. United States, supra, at 391, 109 S.Ct., at 665. See also Burns v. United States, 501 U.S. 129, 133, 111 S.Ct. 2182, 2184, 115 L.Ed.2d 123 (1991). The most obvious operation of this principle is with respect to the Guidelines themselves. The Sentencing Reform Acts provides that, unless the sentencing court finds an aggravating or mitigating factor of a kind, or to a degree, not given adequate consideration by the Commission, a circumstance not appliacble in this case, "[t]he court shall impose a sentence of the kind, and within the range," established by the applicable guideline. 18 U.S.C. §§ 3553(a)(4) (b). The principle that the Guidelines Manual is binding on federal courts applies as well to policy statements. In Williams v. United States, 503 U.S. 193, 201 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992), we said that "[w]here...a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable Guidelines." There, the District Court had departed upward from the Guidelines' sentencing range based on prior arrests that did not result in criminal convictions. A policy statement, however, prohibited a court from basing a departure on a prior arrest record alone. USSG § 4A1.3, p.s.

We held that failure to follow the policy statement resulted in a sentence "imposed as a result of an incorrect application of the sentencing guidelines" under 18 U.S.C. § 3742(f)(1) that should be set aside on appel unless the error was harmless. Williams, supra 1119-1121.

[4]     Commentary which functions to "interpret [a] guideline or explain how it is to be applied," USSG § 1B1.7, controls and if failure to follow , or a misreading of such commentary results in a sentence "select[ed] ... from the wrong guideline range," Williams, supra, 503 U.S., at 203, 112 S.Ct., at 1120, that sentence would consitute "an incorrect application of the sentencing guidelines" under 18 U.S.C. § 3742(f)(1). A Guideline itself makes this proposition clear. See USSG § 1B1.7 ("failure to follow such commentary could consitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal"). Our holding in Williams, dealing with policy statement applies with equal force to the commentary before us here. Cf. USSG § 1B1.7 (commentary regarding departures from the Guidelines should be "treated as the legal equivalent of a policy statement"); § 1B1.7, comment. ("Portions of [the Guidelines Manual] not label as guidelines or commentary and thus the force of policy statement").

[5]     Different analogies have been suggested as helpful characterizations of the legal force of commentary. Some we reject. We do not think it helpful to treat commentary as a comptemporaneous statement of intent by the drafters or issuers of the guideline, having a status similar to that of, for example, legislative committe reports or the advisory committe notes to the various federal rules of procedure and evidence. Quite apart from the usual difficulties of attribu-

-5-

ting meaning to a stutatory or regulatory command by reference, to what other documents say about its proposers' initial intent, here, as is often true, the commentary was issued well after the guideline it interprets had been promulgated. The guidelines of the Sentencing Commission moreover, cannot become effective until after the 6-month review period for congressional modification or disapproval. It seems inconsisent with this process for the Commission to announce some statement of initial intent well after the review process has expired. To be sure, much commenteary has been issued at the same time as the guideline it interprets. But neither the Guidelines Manual nor the Sentencing Reform Act indicates that the weight accorded to, or the function of, commentary differs depending o whether it represents a contemporaneous or ex post interperetation.

We also find inapposite an analogy to an agency's construction of a federal statute that it administers. Under <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), if a statute is unambiguous the statute governs; if, however, Congress' silence or ambiguity has "left a gap for the agency to fill," courts must differ to the agency's interpretation so long as it is "a permissible construction of the statute." Id., at 842-843, 104 S.Ct., at 2781-2782. Commentary, however, has a function different from an agency's legislative rule. Commentary, unlike a legislative rule, is not the product of delegated authority for rulemaking, which of course must yield to clear meaning of the Statute. Id., at 843, n. 9, 104 S.Ct., at 2781, n. 9. Rather, commentary explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice.

[6]      According this measure of controlling authority to the commentary is consistent with the role the Sentencing Reform Act contemplates for the Sentencing Commission. The Commission, after all, drafts the guideline as well as the commentary interpreting them, so we can presume that the interpretations of the guidelines contained in the commentary represent the most accurate indications of how the Commission deems that the guidelines should be applied to be consisent with the Guidelines Manual as a whole as well as the authorizing statute. The Commission has the statutory obligation "periodically [to] review and revise" the guidelines in light of its consultation with authorities of the federal criminal justice system. See 28 U.S.C. § 994(o). The Commission must also revie[w] the presentence report, the guideline worksheets, the tribunal sentencing statement, and any written plea agreement," Mistretta v. United States, supra, 488 U.S., 369-370, 109 S.Ct. at 653, with respect to every federal criminal sentence. See 28 U.S.C. § 994(w). In assigning these functions to the Commission, "Congress necessarily contemplated that the Commission would periodically review the the work of the court, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." Braxton v. United States, 500 U.S. 344, 348, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991).

Although amendments to guidelines provisions are one method of incorporating revisions, another method open to the Commission is amendment of the commentary, if the guideline which the commentary interprets will bear the construction. Amended commentary is binding on the federal courts even though it is not review by Congress, and prior judicial constructions of a particular guideline cannot prevent Commis-

sion from adopting a conflicting a conflicting interpretation that satisfies the standard we set forth today.

It is perhaps ironic that the Sentencing Commission's own commentary fails to recognizes the full significance of interpretive and explanatory commentary. The commentary to the Guideline on commentary provides:

> "[I]n seeking to understand the meaning of the guidelines courts likely will look to the commentary for guidance as an indication of the intent of those who wrote them. In such instances, the courts will treat the commentary much like legislative history or other legal material that helps determine the intent of a drafter." USSG § 1B1.7, comment.

We note that this discussion is phrased in predictive terms. To the extent that this commentary has prescriptive context, we think its exposition of the role of interpretive and explanatory commentary is inconsistent with the uses to which the Commission in practice has put such commentary to follow interpretive and explanatory commentary could result in reversible error. Stinson v. United States, 508 U.S. 36, 123 L.Ed.2d 598, (Cite as 113 S.Ct. 1913 [1993]). Stinson v. United States, 508 U.S. 36 123 L.Ed.2d 598 (Cite as S.St. 1913 (1993)).

**Discharged terms under §5G1.3—**

In United States v. O'Hagan, 139 F.3d 641 (8th Cir. 1998), the 8th Circuit held that a sentencing court could depart downward to adjust for time served on a discharged state sentence. The 7th Circuit had reached the same concluson earlier in United States v. Blackwell, 49 F.3d 1232, 1241-42 (7th Cir. 1995). However, in United States v. McHan, 101 F.3d 1027, 1040 (4th Cir. 1996), the Fourth Circuit held that a court cannot depart downward to allow an adjustment for a discharged sentence. The Commission resolved the conflict by rejecting the Fourth

-8-

Circuit's view, amending §5G1.3 to provide that "in case of a discharged term of imprisonment, a downward departure is not prohibited if subsection (b) would have applied to that term of imprisonment had the term been undischarged." Also see Criminal Law Reporter, Vol. 72, No. 2, pages 29-30. (Attachment "A").

WHEREFORE, for the foregoing reasons, Petitioner prays that this Honorable Court will award credit for the **17 months** served on the state sentence of imprisonment prior to Petitioner's sentencing in federal court for the instant offense.

Respectfully submitted this  3  day of March, 2003

*[signature]*
John Edward Mortimer #82407-079
Federal Prison Camp
P.O. Box 725
Edgefield, S.C. 29824

## CERTIFICATE OF SERVICE

I, John Edward Mortimer, the Petitioner hereby certify that a true and correct copy of the foregoing Objection to Magistrate Judge's Report and Recommendation has been served upon the United States by placing same in the receptacle marked "LEGAL MAIL", as provided by prison authoritites for inmate mailings, with proper prepaid postage for first-class mail affixed and addressed to:

Assistant U.S. Attorney
James Turner
P.O. Box 61129
Houston, Texas 77208

DONE SO THIS  3  day of March, 2003

*[signature]*,
John Edward Mortimer #82407-079

-9-

communication with a government attorney when the information is being requested for a criminal case.

Although the defendant cited several federal appeals court decisions for this proposition, the court distinguished those cases as presenting the question whether a government lawyer's advice to an officeholder is privileged as against a grand jury subpoena in a criminal investigation of government officials. Those cases, the court said, did not hold that the attorney-client privilege between a government agency and its lawyer has no application in a criminal case.

At most, the court said, the Seventh Circuit could be expected to hold that the government's attorney-client privilege is not absolute in a criminal case, and that the requesting party's need for the information and the agency's need for confidentiality can be considered. In this case, the court found that the SEC action memorandum likely would hold limited value for the lawyer and the other defendants, and that the circumstances therefore did not call for overriding the government's attorney-client privilege.

The lawyer-defendant also argued that the government waived its claim of privilege when the SEC attorney in charge of the civil action told the defendant's counsel of the probable existence of an SEC memorandum discussing his criminal or civil liability. In response, the court pointed out that it is standard SEC procedure before bringing a civil action to produce an action memorandum or similar document that addresses why other potential defendants should not be named in the civil action. Accordingly, the SEC's lead attorney in the civil action "was not revealing any great secret" by mentioning the likely existence of such a document to the defendant's counsel, the court said.

**Admissibility of Memo.** The court also discussed the admissibility of the SEC memorandum and the government's duty to produce exculpatory material in a criminal case. Here, the court determined, the only portion of the document that was potentially admissible and exculpatory was the part relating to the lawyer-defendant, which had already been disclosed. The government did not have to disclose the document itself other than that portion, the court declared.

"Because the Action Memorandum is protected from disclosure by the Attorney-Client privilege and no sufficient basis is found for overriding that privilege, neither the SEC nor the prosecution team will be required to provide the Action Memorandum to defendants," the court concluded.

Robert A. Novelle of Serpico, Novelle & Navigato, Chicago, represented the defendant. Edward G. Kohler and Patrick Sean Layng, of the Office of the U.S. Attorney for the Northern District of Illinois, Chicago, represented the government.

Full text at http://pub.bna.com/cl/01cr852.pdf

Sentencing (Attachment "A")

## Federal Judge Has Authority to Grant Credit for Time Served on State Sentence

*Third Circuit rejects U.S. Bureau of Prisons' claim of exclusive statutory authority to award credit on sentence.*

The U.S. Sentencing Guidelines give federal district judges authority to award credit on a defendant's federal sentence for time served on a state sentence for an <u>unrelated</u> offense, the U.S. Court of Appeals for the Third Circuit held Sept. 19. Other courts and the Bureau of Prisons have concluded that amendments to the guidelines in 1995 were intended to eliminate judges' authority to award credit for time served. (*Ruggiano v. Reish*, 3d Cir., No. 01-3703, 9/19/02)

The petitioner was convicted of a state offense in New York in 1996. Fourteen months later he was sentenced on a federal conviction for racketeering. At sentencing, the district judge ordered that the federal sentence run concurrently with the state sentence, and that the petitioner receive credit for time served on the state sentence.

In calculating the petitioner's release date, the BOP refused to grant him credit for the 14 months served on the state sentence prior to his sentencing in federal court. The petitioner challenged this decision in a habeas corpus action pursuant to 28 USC 2241.

**BOP's Position.** The BOP maintained that, under the guidelines provision governing undischarged sentences, USSG 5G1.3, district judges lack the authority to grant credit for time served on undischarged terms for unrelated offenses. The part of Section 5G1.3 at issue in this case is the catch-all provision, subsection (c). Subsection (a) addresses offenses committed while serving another sentence, and subsection (b) addresses offenses that are <u>related to each other</u>; neither applies in this case. Subsection (c) provides:

> In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

The BOP pointed out that the commentary to subsection (b)—Application Note 2—makes clear that subsection (b)'s requirement that sentences for related offenses are to run concurrently means that a defendant is to be given credit for time already served on the earlier sentence. The BOP stressed that the commentary to subsection (c) lacks a similar instruction. Relying on *United States v. Fermin*, 252 F.3d 102 (2d Cir. 2001), the BOP argued that "concurrently" in subsection (c) can only mean concurrently with the unserved remainder of the earlier sentence.

The BOP also relied on 1995 amendments to subsection (c) that eliminated language directing judges to impose a consecutive sentence to the extent necessary to fashion "a sentence resulting in a reasonable incremental punishment for the multiple offenses." Prior decisions of the Third Circuit interpreting subsection (c) had relied on this language in awarding credit for time served.

**Credit May Be Granted.** In an opinion by Chief Judge Edward R. Becker, the court said that even if it were not constrained by its prior ruling in *United States v. Brannan*, 74 F.3d 448 (3d Cir. 1996), it would reject the BOP's arguments. The term "concurrently" as used in subsection (b) includes time served, and it should be given the same meaning in subsection (c), in the absence of some instruction from the Sentencing Commission to the contrary, the court reasoned.

The court said the change intended by the 1995 amendments was simply a softening of mandatory lan-

guage to permissive language. "As we see it, the relevant difference between subsections (b) and (c) that is suggested by Note 2 is that, while credit for time served on related convictions 'should' be granted under subsection (b), it *may* be granted by the sentencing court in its discretion in subsection (c) cases, but is not required," the court said.

Whereas the pre-1995 commentary states that a sentencing court judge "should" consider a reasonable incremental penalty that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed had all of the offenses been imposed in a single federal proceeding, the new commentary's silence with regard to this practice of "hypothetical sentencing" indicates that it is no longer necessarily required or encouraged as it was under the pre-1995 Guidelines, the court explained.

Linda S. Sheffield, Atlanta, Ga., argued the defendant's case. Theodore B. Smith III, of the U.S. Attorney's Office for the Middle District of Pennsylvania, Harrisburg, Pa., argued the government's case.

Full text at http://pub.bna.com/cl/013703.pdf

*Obstruction of Justice*

### Private Party Bankruptcy Trustee Is 'Officer' for Purposes of Obstruction Statute

*However, trustee is not "government officer" for purposes of U.S. Sentencing Guidelines's official-victim enhancement.*

A private attorney hired as counsel by a bankruptcy trustee qualifies as an officer of the court for purposes of a federal obstruction of justice statute, 18 USC 1503(a), the U.S. Court of Appeals for the Second Circuit held Sept. 24. However, it also ruled that a trustee is not a "government officer" for purposes of the official victim enhancement provided by Section 3A1.2(a) of the U.S. Sentencing Guidelines. (*United States v. Crispo*, 2d Cir., No. 00-1711, 9/24/02)

**Officer of the Court.** The case grew out of threats the defendant made after filing for bankruptcy. Evidence presented at the defendant's trial showed that, among other threats, he said he was going to kidnap the child of an attorney hired as counsel by the bankruptcy trustee.

As the U.S. Supreme Court recognized in *United States v. Aguilar*, 515 U.S. 593 (1995), there are several different theories of liability that will support a conviction under Section 1503(a). Much litigation has addressed the broad "omnibus" clause of the statute, which criminalizes interference with "the due administration of justice." The government did not rely on this clause at the defendant's trial; instead, the defendant was found guilty of violating Section 1503(a)'s prohibition of corrupt endeavors "to influence, intimidate, or impede any ... officer in or of any court of the United States." In an opinion by Judge Richard J. Cardamone, the court observed that there is "virtually no direct authority to suggest that a trustee [is] a court officer within the meaning of the statute."

Both parties relied on Section 1503(a)'s roots in a 19th Century effort by Congress to reform the punishment of contempt. By an 1831 act, 4 Stat. 487, Congress limited court officers' power to summarily punish contempt to misbehavior that occurred within or near the presence of the court. This provision was the predecessor to 18 USC 401. The predecessor to Section 1503(a) applied to misbehavior outside the presence of the court and required the protections of indictment and trial.

In *Cammer v. United States*, 350 U.S. 399 (1956), the Supreme Court gave a narrow reading to the term "officer" in Section 401. The defendant contended that, because the original distinction between Section 401 and Section 1503(a) was unrelated to the identity of the "officer," the term should be given the same meaning in both statutes.

The Second Circuit agreed that the answer to the question presented in this case is found in *Cammer*, but it did not agree with the defendant's interpretation. The *Cammer* court decided that the category of officers referred to in Section 401 should be the officers of the court described in Part III of the U.S. Code's judiciary title—i.e., 28 USC 601–963.

The Second Circuit pointed out that Congress, in the 1898 Bankruptcy Act, defined the term "officer" as including trustees. With this in mind, the court reasoned:

> Thus, in the specific context of bankruptcy proceedings, Congress placed trustees in the category of court officers that *Cammer* would later list as paradigmatic conventional officers. Accordingly, a trustee in bankruptcy is also a conventional court officer protected by the court-officer prong of § 1503.

The defendant argued that Congress could not have intended bankruptcy trustees to be covered by the court-officer prong of Section 1503 because bankruptcy trustees did not exist in the United States when the 1831 act was passed. The court decided that "[i]t would be unreasonable for us to assume that Congress intended to protect only court officers defined as such on the date it passed the Act of 1831, rather than those officers and any others it specifically chose to label as court officers after 1831."

The court also decided that the meaning of the term is sufficiently clear that the rule of lenity does not apply.

**Official Victim Enhancement.** On the other hand, the court ruled that a private party bankruptcy trustee does not qualify as a "government officer or employee" for purposes of the offense level enhancement provided by Section 3A1.2(a). "Unlike the term 'court officer,' the term 'government officer' cannot be stretched to include private parties, at least with respect to bankruptcy trustees," the court decided. It said that the words "government" and "private" are "opposite by definition," and that the distinction between the government and private actors is important for trustees outside of the context of the guidelines.

The defendant's case was argued by Edward J.M. Little, New York. The government's case was argued by James G. Cavoli, of the U.S. Attorney's Office for the Southern District of New York, New York.

Full text at http://pub.bna.com/cl/001711.pdf